**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 2:12-CR-131 |
| vs. | : | JUDGE WATSON |
| RANDALL ROBERTS, | : | |
| Defendant. | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

**I.      INTRODUCTION**

Randall Roberts is before the Court for sentencing upon his guilty plea to coercion and enticement in violation of 18 U.S.C. § 2422(b).  In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court formally announced the following two-step analysis that a district court should apply to determine a sentence that is sufficient, but not greater than necessary, to vindicate Congress' mandate that was codified for sentencing:   (1) a district court should begin all sentencing proceedings by correctly calculating the applicable guideline range. *Id*. at 49.  The Court noted that the Guidelines are the "starting point and the initial benchmark." *Id*.  Undoubtedly, part of this determination would also require the district court to assess the propriety of a departure from the otherwise applicable guideline range; and (2) "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id*.  at 49-50.

## II. GUIDELINE CALCULATIONS

The probation officer has made the following guideline calculations in this case:

| | | |
|---|---|---|
| Base Offense Level § 2G1.3 | | 28 |
| Specific Offense Characteristic § 2G1.3(b)(2)(B) | + | 2 |
| Specific Offense Characteristic § 2G1.3(b)(3) | + | 2 |
| Specific Offense Characteristic § 2G1.3(b)(4) | + | 2 |
| ADJUSTED OFFENSE LEVEL | | 34 |
| Timely Acceptance of Responsibility | - | 3 |
| **TOTAL OFFENSE LEVEL** | | **31** |

| | |
|---|---|
| Criminal History Category | I |
| Advisory Guideline Range | 108 - 135 Months |
| Mandatory Minimum | 120 Months |

The defense does not contest the probation officer's calculations in this case. The government, likewise, acknowledges that the probation officer's calculations are correct.

Furthermore, the probation officer has not identified any information that would warrant a departure or a deviation from the advisory guideline range. The defense concurs with the probation officer's assessment.

## III. § 3553(a) Factors

### History and Characteristics of the Defendant

Randall "Randy" Roberts is 41 years old. Randy never met his father and during his early years, he and his mother moved frequently from Connecticut to Florida to Pennsylvania and finally to Ohio. During that time, Randy's mother was married four times and Randy changed schools on seven occasions.

When Randy was 10 years old, his family moved to Columbus and the family life stabilized to some extent. He was able to graduate from Pickerington High School. During his high school

2

years, a counselor believed that Randy had mental health and substance abuse issues. (PSR ¶ 70). Randy was a regular user of marijuana from the age of 15 until his arrest in this case.

Randy's alcohol and drug usage has caused him to have intermittent contacts with the criminal justice system (*see* PSR ¶¶ 46-49), however, he had not served more than 10 days in jail, has no criminal history points and is in CHC I.

Although he was not a good student, Randy has proven himself to be a good worker. After completing high school, Randy worked at various restaurants including Denny's, National Road Restaurant, Ruby Tuesday's and Frisch's. Randy ventured outside of restaurant work to work for a company named Drier and Maller which installs pipeline. He worked for this company for five years but decided to return to restaurant work.

In 2001, Randy obtained an excellent job as a kitchen manager for Carrabba's Italian Grill. He assisted the company in opening the Polaris restaurant. He was then moved to Dayton to help out a restaurant before returning to Columbus and working at two additional Carrabba's restaurants. In all, Randy worked at Carrabba's for nine years until 2010. The general manager described Randy as a good worker. (¶ 76). After leaving Carrabba's, Randy went into business with his half-brother Adam Pollock. The brothers ran a landscaping and lawn care business.

In July 2007, Randy was able to buy a home in Columbus at 5528 Hazelwood Road. From 2007 until his arrest, Randy lived in his home with his long time girlfriend, Brittany Dull. She is employed as a dental technician. Although Randy's activities are very troubling to Brittany, she remains supportive.

**Nature and Circumstances of the Offense**

Randy Roberts carried on a sexual relationship with a fifteen year old girl that he met on the Internet. The relationship lasted from December 2011 until Roberts was arrested on May 16, 2012. He has received guideline enhancements because he (1) unduly influenced a minor to engage in prohibited sexual conduct; (2) he used the Internet to entice the child; and (3) the offense involved the commission of a sex act.

Randy timely notified the government of his intention to plead guilty. In fact, he plead guilty to an Information without even requiring the government to seek an Indictment against him. Although he is in CHC I and has an advisory range of 108 - 135 months, he faces a mandatory ten years of imprisonment.

Randy recognizes that his actions were terribly wrong. He plans to serve his sentence and address his substance abuse and mental health issues. He hopes to emerge from prison a better person.

Certainly, Randy's actions have contributed to the victims problems. Randy is not seeking to minimize his own wrongful action, however, the victim impact portion of the PSR is overstated. The victim in this case was suffering from depression, had substance abuse issues and was sexually experienced when she met Randy on-line and agreed to meet with him for sex. Her problems began well before she met Randy Roberts. Nonetheless, Randy's actions were harmful to the victim and he fully acknowledges the wrongfulness of his actions.

**Just Punishment, Adequate Deterrence, Protection of the Public**

The crime of conviction carries a mandatory minimum 10 years incarceration. Therefore, the Court cannot even consider the low end of the advisory range of 108 months.

4

Obviously a sentence of 10 years is a very significant sentence. Such a sentence is a substantial deterrent to anyone who might be considering similar conduct. A sentence of 120 months is not only sufficient but greater than necessary to protect the public. Statistically, Randy Roberts is not likely to recidivate. In May 2004, the United States Sentencing Commission published *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*. This work discussed the findings of a random, stratified sample of 6,062 defendants sentenced under the guidelines. *See* United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, (May 2004); available online at: http://www.ussc.gov/Research/Research_Publications/Recidivism/200405_Recidivism_Criminal _History.pdf, at 3 (hereinafter, "Recidivism Report).

The Recidivism Report uses two definitions for recidivism. The primary definition of recidivism includes (1) any time a probationer is re-convicted, (2) any time a probationer is re-arrested with no disposition information available; and (3) any time a probationer has his or her supervision revoked. *Id*. at 4. The narrower "re-conviction" definition limits recidivism to re-conviction events. *Id*. Both of these statistics measure recidivism rates to be higher than re-offense recidivism rates.

Category I offenders have an overall primary recidivism rate of 13.8% and a re-conviction recidivism rate of 4.0%. *Id*. at 21. (Exhibit 2). In other words, on average, 13.8% of all Category I offenders are re-convicted, re-arrested without a reported disposition, or have their supervision revoked within two years of release; 4% of all Category I offenders are re-convicted of a separate offense within two years of release. Moreover, offenders with zero criminal history points have a primary recidivism rate of 11.8% and a re-conviction recidivism rate of 3.6%.

**Conclusion**

The advisory range reflects all of the enhancements that have been applied in this case. A sentence of 120 months would represent a sentence at the middle of the advisory guideline range. A sentence of 120 months is adequate to protect the public and provide just deterrence.

Respectfully submitted,

STEVEN S. NOLDER
FEDERAL PUBLIC DEFENDER


　　/s/　Gordon G. Hobson
Gordon G. Hobson　(0004681)
Senior Litigator
Federal Public Defender's Office
10 West Broad Street, Suite 1020
Columbus, Ohio 43215-3469
(614) 469-2999
Gordon_Hobson@fd.org

Attorney for Defendant
Randall Roberts


**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of this Sentencing Memorandum was electronically served upon Heather Hill, Assistant United States Attorney, United States Attorney's Office, 303 Marconi Blvd., Suite 200, Columbus, Ohio 43215 this 28th day of September, 2012.

　　/s/　Gordon G. Hobson
Gordon G. Hobson　(0004681)
Senior Litigator

Attorney for Defendant
Randall Roberts