# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No: 2:12-CR-131 |
| : | |
| v. : | |
| : | JUDGE MICHAEL H. WATSON |
| RANDALL V. ROBERTS : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through undersigned counsel, hereby submits its Memorandum in Aid of Sentencing, as ordered by the Court and in response to Defendant's Sentencing Memorandum.

## BACKGROUND

On May 2, 2012, the defendant, Randall V. Roberts, entered a plea of guilty pursuant to a plea agreement, to a one-count Information that charged him with coercion and enticement of a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b). The defendant admitted to using the internet to solicit a 15-year-old girl to engage in illegal sexual activity, to repeatedly engaging in sexual activity with the minor female, and to possessing approximately 39 videos that depicted minors engaging in sexually explicit conduct and sexually explicit photographs of the identified 15-year-old female. The defendant filed a sentencing memorandum ("Defendant's Memorandum") on September 28, 2012. Sentencing in this case was continued from the original date of October 30, 2012, and is now scheduled for December 12, 2012.

## PRESENTENCE INVESTIGATION REPORT AND RECOMMENDATION

The United States has reviewed both the initial and final PSRs in this case. Subsequent to the disclosure of the initial PSR, the defendant objected to the application of U.S.S.G. § 4B1.5(b)(1) (Repeat and Dangerous Sex Offender Against Minors), asserting that there was not sufficient evidence that the defendant's alleged prior sexual activity with a 15-year-old female in 2004 constituted "prohibited sexual conduct." Thus, according to the defendant, the only activity in which he engaged that constituted prohibited sexual conduct was his conduct with the minor in the instant case. Based on the facts regarding the 2004 incident that were disclosed to the government, namely that the 15-year-old female represented to the defendant's girlfriend that she was 17, the government conceded that the defendant's position was correct. The enhancement pursuant to U.S.S.G. § 4B1.5(b)(1) was thus removed prior of disclosure to the final PSR.

Subsequent to the disclosure of the final PSR and the filing of the Defendant's Memorandum, the government discovered case law regarding the applicability of U.S.S.G. § 4B1.5(b)(1). In *United States v. Brattain*, the Sixth Circuit Court of Appeals held that "the plain language of U.S.S.G. § 4B1.5 (b)(1) and its application note apply to defendants who abuse only a single victim." 539 F.3d 445, 448 (6th Cir. 2008). The *Brattain* Court went on to explain that its holding was supported by the clear Congressional intent announced when U.S.S.G. § 4B1.5 (b)(1) was amended to remove the requirement that there be multiple victims involved for the enhancement to apply.[1]

In this case, the defendant admitted that between December 2011 and May 2012, he coerced the minor victim to perform oral sex on him on numerous occasions and that the minor

---

[1] The government also directs the Court to *United States v. Bowling*, 427 Fed. Appx 461 (6th Cir. 2011), where the Court upheld application of § 4B1.5(b)(1) finding that the government had submitted sufficient evidence that the defendant had taken sexually explicit photographs of the minor victim on more than one occasion and had thus engaged in "a pattern of activity involving prohibited sexual conduct."

victim alleged that there were several other times that he sexually assaulted her during that time frame. He further admitted that he had convinced the minor victim to meet him on May 16, 2012, to again engage in sexual activity. All of these separate and numerous acts meet the definition of prohibited sexual conduct pursuant to Application Note 4 of U.S.S.G. § 4B1.5. As such, the government submits that the defendant has "engaged in a pattern of activity involving prohibited sexual conduct" and U.S.S.G. § 4B1.5 (b)(1) is therefore applicable in this case. The government has submitted a letter to the Probation Officer regarding this matter, a copy of which was provided to defense counsel. An addendum to the PSR relating to this issue was disclosed on November 30, 2012, in which both the Probation Officer and defense counsel indicate that they believe the applicability of U.S.S.G. § 4B1.5 (b)(1) is a legal matter to be determined by the Court.

The Probation Officer has calculated an advisory sentencing guideline range for the defendant of 120-135 months (pursuant to U.S.S.G. § 5G1.1(c)(2)), based on a total offense level 31 and a criminal history category I. The PSR indicates that there are no factors that warrant departure or deviation from the applicable guideline range, and the government concurs with that finding. The sentence recommended by the Probation Officer is 128 months, which represents a sentence towards the bottom of the guidelines range calculated in the PSR. Based on the foregoing discussion, the government submits that the five-level enhancement pursuant to U.S.S.G. § 4B1.5 (b)(1) is applicable to the offense in this case, which would result in a total offense level of 36, and an advisory guideline range of 188 to 235 months. The government recommends a sentence within that guideline range.

In Defendant's Memorandum, he requests that the Court impose a sentence of 120 months, the statutory mandatory minimum applicable to the offense to which he has pled guilty.

As a basis for this request the defendant argues that he is statistically unlikely to recidivate and that the statutory minimum sentence would therefore be adequate to protect the public and provide sufficient deterrence.

For the reasons that are more fully discussed below, the government submits that a sentence of 188 months of incarceration, which represents a sentence at the very bottom of the sentencing guideline range recommended by the government, would be sufficient, but not greater than necessary to carry out the important goals of sentencing that have been mandated by Congress. The government believes that the recommended sentencing guideline range appropriately considers the offense the defendant committed, and submits that a sentence within that guideline range is warranted in light of all of the factors the Court is statutorily directed to consider when imposing sentence.

## ANALYSIS AND RECOMMENDATION OF THE UNITED STATES

After *Booker v. United States*, district courts should engage in a three-step sentencing procedure. 543 U.S. 220 (2005). The court must first determine the applicable guidelines range, then consider whether a departure from that guidelines range is appropriate, and finally consider the applicable guidelines range, "along with all of the factors listed in section 3553(a)" to determine the sentence to impose. The central command of 18 U.S. C. § 3553 (a) directs courts to impose a sentence sufficient, but not greater than necessary, to meet the goals of sentencing set forth in 18 U.S.C. § 3553(a).

### I.     Guidelines Calculation and Possible Departure

Pursuant to *Booker*, the starting point for determining an appropriate sentence is accurately calculating the sentencing guideline range, and determining whether any departures from that guideline range is applicable. As discussed above, the government submits that the

properly calculated guideline range for this defendant is 188 to 235 months. The government concurs with the Probation Officer's recommendation that there are no bases for departure or deviation from the applicable guidelines range in this case. Thus, the government submits that proper completion of the first step in the sentencing process results in a starting point of 188 to 235 months of incarceration. The Court is next directed to consider that starting point and weigh it against all of the other § 3553(a) sentencing factors.

**II.     Section 3553(a) Factors**

Pursuant to 18 U.S.C. § 3553(a), there are seven factors the court is to consider during sentencing: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes of sentencing; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.

<u>Nature and Circumstances of the Offense/ History and Characteristics of the Defendant</u>

A.  Nature and Circumstance of the Offense

In December 2011, the defendant, a 41-year-old man, contacted the then 14-year-old victim via a social networking website. Despite the victim's age, which was clearly indicated on her profile page on the website, the defendant engaged in ongoing conversations with her, convinced her to meet him to listen to music, and then pressured and coerced her to engage in sex acts with him. Even when the victim indicated that she did not wish to continue her relationship with the defendant, he continued to manipulate and pressure her, threatening to expose the victim if she did not comply. At one point, after apparently not hearing from the victim for a period of time, the defendant made it clear to the victim that she had no option

5

except to continue meeting with him. On December 20, 2011, the defendant and the victim thus engaged in the following online conversation on vampirefreaks.com:

> Defendant (longhair007): So. What the hell is up? I hope you get this. Lol
> Victim (eMoVaMp4): Got my phone taken..
> …
> Defendant: fuck this. i will just send it now. how does that sound?
> …
> Defendant: so thursday. 8:30am. same street. phone or no phone
> …
> Defendant: you do know if you aren't there thursday morning I will send that at 845am. that gives you a 15 minute window
> Victim: Send what?
> Defendant: that email. did you forget?
> Victim: no.
> Defendant: just checking. just make sure you are there.

This manipulation and coercion continued throughout the subsequent months of their "relationship." On January 1, 2012, the defendant again threatened to expose the victim if she did not find a way to continue to meet with him:

> Victim: … Omg ur gonna fuckin hate me … she doesn't have to work tomoro. … plz don't be angry.
> Defendant: Figure it out or I send it a [sic] 9. I am done fucking aroaround [sic]
> Victim: u can see me every school day if u want..
> Defendant: How. …
> Victim: after school I have about 40 mins alone.. ik its short.. but it is everyday..
> …
> Defendant: Fuck this shit. You just had how many says [sic] off. I am done. I saw you 0 times. Done with it
> Victim: You saw me once… This is hard okay? Can I just see u everday[sic]?
> Defendant: Not for all of last week I didn't
> Victim: They have tight reigns on me..
> Defendant: Not my problem
> Victim: i know.. but u have to admit, i did offer u my virginity
> Defendant: I know. But this is bullshit
> Victim: i tend to have bad luck..
> Defendant: I am pissed. I am sending it.

6

The manipulative nature of their communications continued as the victim made more attempts to extricate herself from the relationship in May of 2012, by making up a story that she had gotten engaged to someone else.

> Victim: … I got engaged (:
> Defendant: To?
> Victim: my boyfriend lol he proposed yesterday I said yes but of course im gonna wait a few years to actually get married. .. r u mad
> …
> Defendant: I will see you the 16th.
> Victim: Okay. R u mat [sic] at me?
> Defendant: In the morning. You have a 2hr late start for school
> …
> Victim: .. If I wanted to stop this, would you let me?
> Defendant: No
> Victim: I didn't think so..
> Defendant: You are special
> Victim: … but im 15
> Defendant: So
> …
> Defendant: … I will make a deal.
> Victim: Whats the deal? Ill fuck u once then we can just be friends?
> Defendant: We do the 16th. Then june and july. Then I will set you completely free.

Thus, although the defendant appears to discount the impact his actions had on the victim, asserting that she was depressed, sexually experienced and had substance abuse issues before meeting him (Defendant's Memorandum at 4), the facts and evidence in this case clearly show that the defendant took advantage of the victim's youth and vulnerability to coerce her to do what he wanted. To the extent the victim had "problems" before meeting the defendant, it would then appear that, rather than making any effort to help the victim, the defendant exploited and manipulated the victim's weaknesses. Far from lessening the gravity of this offense, the fact that the defendant preyed on a vulnerable victim makes his actions that much more reprehensible.

B. History and Characteristics of the Defendant

In Defendant's Memorandum, he discusses various difficulties that he experienced during his formative years and his history of consistent employment. Defendant's Memorandum at 2-3. He moved numerous times in his childhood and appears to have had a somewhat unstable childhood. *Id.* at 2; PSR ¶ 55. He has been consistently employed, first in the restaurant industry and later owning his own lawn care business with his brother. Defendant's Memorandum at 3; PSR ¶¶ 75-77. The defendant has also regularly used marijuana from the time he was 15 until the date of his arrest in this case; indeed when officers executed the search warrant at his home, they located approximately 75 marijuana plants along with drug paraphernalia and growing equipment. *Id.*; PSR ¶ 18. The defendant has been arrested several times for a variety of drug-related crimes and was investigated for rape in 2004 in Miami Township. PSR ¶¶ 46 to 53.

Although the government is sympathetic to the difficulties the defendant has faced and hopes that he may obtain counseling to address any issues arising from his childhood, the government submits that there are countervailing aspects of the defendant's history that indicate that he is a dangerous sexual predator. This is not the defendant's first sexual relationship with a minor female. In an interview with law enforcement officers subsequent to his arrest, the defendant discussed the start of his relationship with his current girlfriend. The defendant's girlfriend was also interviewed by the probation officer, and the summary of that interview was included in the PSR. According to the defendant and his girlfriend, they met on the internet approximately 10 years ago, when the defendant was 31 and his girlfriend was a 17-year-old minor. PSR ¶ 63. They were dating in 2004, when, as detailed in the statement of facts presented at the plea hearing and noted in the PSR, the defendant was investigated for a charge

8

of rape. PSR ¶ 53. The victim of the alleged rape was a 15-year-old female who was friends with the defendant's girlfriend and had told the defendant's girlfriend that she was 17 rather than 15.[2] Although the defendant was never indicted or convicted for this offense, the government submits that the Court may properly consider the previous criminal allegations against the defendant along with all of his other history. *See* 18 U.S.C. § 3661. Furthermore, while the defendant's prior interaction with the minor females did not constitute illegal activity or prohibited sexual conduct, the government submits that the defendant's history shows his propensity for minor females, which has grown increasingly dangerous and detrimental to the females involved. The dangerousness of his actions is exacerbated by the fact that the minors he is targeting are getting younger, as the victim in this case was 14 years old when the communications started.

In light of all of the defendant's history, which includes ongoing involvement with marijuana and with minor females, the government submits that a sentence of 188 months of incarceration is warranted.

The Statutory Purposes of 3553(a)

A. Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

A sentence of 188 months in this case would accomplish all of these purposes. As indicated above, the offense to which the defendant pled guilty is undoubtedly serious, a fact that is indicated by the lengthy mandatory minimum sentence Congress saw fit to impose for offenses

---

[2] The government has reviewed the police reports regarding the 2004 rape investigation of the defendant, which indicate that the 15-year-old alleged victim admitted that she told the defendant's girlfriend that she was 17 rather than 15. These reports also show that there was a rape examination performed on the 15-year-old female, and the results of that examination concluded that the defendant's DNA was found in her vagina. These records have been disclosed to the defense, and HSI Special Agent Cameron Bryant, who has communicated with the investigators of the 2004 incident, will be present at the sentencing hearing to provide any necessary testimony regarding the details of the investigation.

of this nature. Given the lengthy mandatory minimum sentence applicable to all offenses under this code provision, it is clear that anytime a defendant uses the internet to coerce a minor to engage in sexual activity, or attempts to do so, the offense is a serious one. In this case, there are numerous factors that heighten the gravity of the offense. Some of those factors are reflected in the specific offense characteristics discussed in the PSR.

Of particular concern is the undue influence enhancement that is automatically applicable pursuant to U.S.S.G. § 2G1.3(b)(2)(B), because the defendant is more than 10 years older than the victim. PSR ¶ 31-34. The defendant is 41 and engaged in a coercive and manipulative relationship with a 14-to-15-year-old girl. Beyond the undue influence inherent from the substantial age difference between the two, the communications described above clearly indicate how the defendant used threats and coercion to influence the minor to continue to engage in a sexual relationship with him. Even if the victim at times appeared willing to engage in the sex acts, or continued to seek attention from the defendant, she was a vulnerable minor while the defendant is an experienced adult. The influence the defendant exerted over the victim by virtue of the substantial age difference, her concern regarding the e-mail he had threatened to send if she did not cooperate, and his provision of alcohol to her (PSR ¶ 32) exacerbate what is already a serious offense even without those added circumstances.

Similarly, the ongoing nature of the defendant's sexual relationship with the minor victim further exacerbates the seriousness of the offense, a factor Congress sought to address when it amended U.S.S.G. § 4B1.5(b)(1) to address situations involving repeated sexual abuse of a single minor. The defendant's use of threats and manipulation to maintain his sexual relationship with a 14-to-15-year-old girl for at least five months involves precisely the type of increased harm to the victim that concerned Congress when it amended § 4B1.5(b)(1). *See U.S. v. Brattain*, 539

F.3d at 448. The ongoing nature of the defendant's offense clearly exacerbated the seriousness of the crime and the detriment to the victim. The government thus submits that the five-level enhancement pursuant to § 4B1.5(b)(1) accurately reflects the heightened seriousness of the offense in this case and believes that a sentence within the resultant sentencing guideline range is warranted.

      B.      Afford Adequate Deterrence to Criminal Conduct

One of the factors the court must consider in imposing sentence is the need for the sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Deterrence includes the deterrence of the defendant in the instant case, as well as those who may consider similar offenses in the future. The government submits that the imposition of a term of 188 months incarceration followed by a 20-year term of supervised release is a necessary and appropriate specific deterrence measure in this case. Furthermore, the government believes that a lengthy sentence in this case will deter other potential defendants by sending a clear message: individuals who engage in this criminal conduct in the Southern District of Ohio will face the severe and lengthy prison sentences mandated by Congress and anticipated by the sentencing guidelines.

The defendant asserts that a sentence of 120 month is a substantial deterrent and that he is statistically not likely to recidivate. Defendant's Memorandum at 5. In support of this argument the defendant cites to the United States Sentencing Commission's 2004 report on recidivism rates of first offenders and the lessened culpability and recidivism rates for this group. *Id*. The defendant's argument fails to take account of the heightened risk of recidivism for sex offenders that has been recognized by Congress (*see United States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008)(referring to Congress' longstanding concern with recidivism in child sex offender cases)),

11

ignores the defendant's history of sexual activity with minor females, and appears to suggest that the defendant can be categorized with other first-time offenders who more frequently commit non-violent offenses.

The defendant's offense was a crime of violence. He sexually abused, threatened and manipulated a minor child via the internet, cell phone and in-person contact. He has had numerous contacts with the criminal justice system, even if he has been able to escape conviction for any prior crimes he may have committed. The government submits that the gravely serious nature of the offense the defendant has committed in this case, his blasé attitude regarding the harm he inflicted on the victim, his possession of child pornography and his history of targeting minor females are better indicators of his likelihood to recidivate than a statistical study that only examined re-arrest, re-conviction and supervision revocations within two years of release. *See* Defendant's Memorandum at 5; United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, (May 2004); available online at: http://www.ussc.gov/Research/Research_Publications/Recidivism/200405_Recidivism_Criminal_History.pdf, at 3. In light of all of the factors present in the defendant's history and the nature of his offense, the government believes that a sentence greater than the statutory minimum is necessary in this case to deter the defendant from future criminal acts against children.

C.  Protection of the Public from Future Crimes of the Defendant

The nature of the defendant's actions in this case created a very serious risk to the most vulnerable members of our society. Not only did he exploit and sexually abuse a vulnerable young girl, he further perpetuated the mental and emotional damage of numerous other minors by downloading and possessing child pornography. The government concedes that the defendant

did not have an extremely large number of images of child pornography on his computer, but disputes that this lessens the dangerousness or risk of harm created by his activity. For all of the reasons analyzed in the foregoing sections of this memorandum, the government submits that the defendant has committed a very serious crime that creates a significant danger to the community, and particularly minor members of our society. That the defendant targeted a minor female in this case that may have had mental and emotional issues only increases the danger that the defendant presents. The government thus submits that a sentence of 188 months is a necessary measure to protect the public.

> D. Providing the Defendant with Needed Training, Medical Care, or Other Correctional Treatment

The defendant has indicated that he wishes to pursue programs for mental health and substance abuse while incarcerated. The government commends this goal and believes that the defendant would benefit from both sex offender treatment and substance abuse programing. The government thus recommends that the defendant be placed in one of the Bureau of Prison institutions which provides Sex Offender Management Program (SOMP) or Sex Offender Treatment Programs (SOTP) and makes the following representations to the Court.

As of February 2012, the BOP has one high intensity residential program (SOTP-R), located at FMC Devens, MA, which has 96 beds. The BOP further has five moderate intensity sex offender treatment programs (SOTP-NR) at various security levels: USP Tucson (high); Marianna, FL; Marion, IL; Petersburg, VA (all medium), and Seagoville, TX (low). All have been fully operational for more than two years. These facilities provide non-residential, moderate intensity sex offender treatment programming. The residential SOMP at FMC Devens in Massachusetts is a residential program that is limited to 112 participants at any one-time. Additionally, the BOP also has non-residential SOTPs at USP Marion (IL), USP Tucson (AZ),

13

FCI Seagoville (TX), FCI Petersburg (VA), and FCI Marianna (FL), which provides 6 month non-residential treatment programs. The United States believes that the completion of either the SOMP or SOPT programs by the defendant will serve the goals of treatment and urges the Court to recommend placement at a facility that offers such programs.

<u>Kinds of Sentences Available, Sentencing Range and Policy Statements in the Guidelines</u>

Pursuant to 18 U.S.C. § 2422(b) a minimum sentence of 10 years of incarceration is mandated for the offense contained in Count One of the Information, with a maximum possible term of incarceration of life. Incarceration is the only type of sentence that may statutorily be imposed for this offense. A term of supervised release of five years is also mandated by statute for this offense, with a maximum possible supervised release term of life. As discussed above, the government submits that the applicable sentencing guideline range, including the enhancement pursuant to U.S.S.G. § 4B1.5(b)(1) is a term of incarceration of 188 to 235 months. The government submits that a sentence within this guideline range comports with Congress' policy considerations in amending § 4B1.5(b)(1), as state by the Court of Appeals in *Brattain*: "Congress found that definition [requiring multiple victims] did not 'adequately take account of the frequent occurrence of repeated sexual abuse against a single child victim, and the severity of the harm to such victims from the repeated abuse.'" 539 F.3d at 448 (citing H.R. Conf. Rep. No. 108-66 at 59 (2003)). The need to account for the increased severity of the harm to the victim and the danger to the public, as indicated by the statement of Congress, warrants the application of § 4B1.5(b)(1) in this case and a sentence within the resulting guideline range.

The Need To Avoid Unwarranted Sentence Disparities

The government submits that the recommended sentence of 188 months in this case would not result in an unwarranted sentencing disparity. The government believes that such a sentence is in line with other sentences imposed in this jurisdiction for defendants who have committed similar offenses. While the government is not aware of many cases in this jurisdiction that involve violations of 18 U.S.C. § 2242(b) with actual sexual contact with a minor, the cases that involve violations of this provision of which the government is aware have involved lengthy terms of incarceration.[3]

The Need for Restitution

As of the date of this memorandum, the government has not received any requests for restitution in this case.

---

[3] *See U.S. v. Kamphius*, 2:12-CR-075 (145 month sentence imposed for defendant on plea to attempted coercion and enticement involving fictitious minor, with no actual hands on offenses); *U.S. v. Hanna*, 2:12-CR-59 (180 month sentence imposed on plea to attempted coercion and enticement involving a fictitious minor, were defendant had prior conspiracy to commit sexual battery conviction).

## CONCLUSION

For the foregoing reasons, the United States submits that a term of incarceration of 188 months, followed by a 20 year term of supervised release, is a reasonable and appropriate sentence in this case and would be sufficient but not greater than necessary to serve the statutory goals of sentencing.

    Respectfully submitted,

    CARTER M. STEWART
    United States Attorney

    s/Heather A. Hill
    HEATHER A. HILL (6291633)
    Assistant United States Attorney

    s/ Catherine M. Russo
    CATHERINE M. RUSSO (0077791)
    Special Assistant United States Attorney
    303 Marconi Boulevard
    Suite 200
    Columbus, Ohio 43215
    (614) 469-5715
    Fax: (614) 469-5653
    Heather.Hill @usdoj.gov
    cmrusso@franklincountyohio.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum was served this 3rd day of December, 2012, electronically upon: Gordon Hobson, Esq., attorney for Randall V. Roberts.

    s/Heather A. Hill
    HEATHER A. HILL (6291633)
    Assistant United States Attorney