IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RANDALL V. ROBERTS,**

    Petitioner,

    v.

**UNITED STATES OF AMERICA,**

    Respondent.

Case No. 2:14-cvv-01208
Crim. No. 2:12-cr-131
Judge Watson
Magistrate Judge King

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the *Motion to Vacate*, ECF No. 41, the *Affidavit[s]* and *Memorandum in Support*, ECF Nos. 41, 44, 46, 47, the *Return of Writ*, ECF No. 48, Petitioner's *Reply*, ECF No. 51, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

Petitioner's *Renewed Request for Affidavit from Counsel*, ECF No. 57, is **DENIED.**

**Facts and Procedural History**

On June 29, 2012, Petitioner pleaded guilty, pursuant to the terms of his *Plea Agreement,* to coercion and enticement of a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). ECF Nos. 15, 18. On December 12, 2012, the District Court imposed a sentence of 188 months' imprisonment plus 15 years' supervised release. ECF No. 31. On August 9, 2013, the United States Court of Appeals for the Sixth Circuit affirmed the *Judgment* of this Court. *See Order*, ECF No. 37.

On August 11, 2014, Petitioner filed the *Motion to Vacate*, alleging that he is innocent in view of a lack of proof establishing his knowledge of the age of the alleged victim, who actively

misled him (claim one); that he did not use a facility or means of interstate commerce to commit the crime (claim two); that he lacked criminal intent and that his use of a computer or phone was not connected to the offense charged (claim three); that he was denied the effective assistance of counsel and was sentenced in violation of the *Plea Agreement* (claims four and five); that the government failed to disclose exculpatory evidence (claim six); that his recommended sentence under the advisory sentencing guidelines was improperly enhanced (claim seven); that police unconstitutionally obtained his statements and other evidence against him (claim eight); and that police illegally and in bad faith obtained the search warrant in this case (claim nine). Respondent contends that Petitioner's claims are either waived or without merit.

**Standard of Review**

In order to obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or when the trial court lacked jurisdiction, or when the sentence is in excess of the maximum sentence allowed by law or is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991). Relief is also available when "the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice,'" *Davis v. United States*, 417 U.S. 333, 346 (1974)(quoting *Hill v. United States*, 368 U.S. 424, 428–429 (1962)); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006). Non-constitutional claims not raised at trial or on direct appeal are waived on collateral review except where the errors amount to something akin to a denial of due process. Mistakes in the application of the sentencing

guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

It is well-established that a § 2255 motion to vacate "is not a substitute for a direct appeal." *Ray v. United States,* 721 F.3d 758, 761 (6th Cir. 2013)(quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained in a motion to vacate under § 2255 unless the petitioner shows either (1) cause and actual prejudice sufficient to excuse his failure to raise the claims on direct appeal or (2) that he is "actually innocent" of the crime. *Ray*, 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998))(internal citations omitted). "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal" *Frady*, 456 U.S. at 166.

**Claims One, Two, Three, and Four**

In his first three claims, Petitioner alleges that he is innocent, or that the evidence is insufficient to sustain his conviction, because he did not know the age of the alleged victim, because his actions did not involve interstate commerce, and because he lacked the requisite criminal intent. Petitioner has submitted an *Affidavit* in support of these claims. ECF No. 44.[1] In his fourth claim, Petitioner alleges that he was denied the effective assistance of counsel.

A claim of insufficiency of the evidence does not provide a basis for relief in proceedings under 28 U.S.C. § 2255. "The United States Court of Appeals for the Sixth Circuit has repeatedly and consistently held that the 'sufficiency of the evidence to support a conviction may not be collaterally reviewed on a § 2255 proceeding' and that such a claim must be raised on direct appeal." *Mitchell v. United States,* Nos. 2:05-CV-274; 2:04-CR-02, 2007 WL 325762, at

---

[1] Petitioner states that, at some point, the alleged victim stated that she was 15 years of age; however, Petitioner thought that this was a "typo." *Affidavit*, ECF No. 44, PageID# 203.

*3 (E.D. Tenn. Jan. 31, 2007)(quoting *United States v. Osburne,* 415 F.2d 1021, 1024 (6th Cir. 1969). *See also Stephan v. United States,* 496 F.2d 527, 528-29 (6th Cir. 1974). Moreover, by his guilty plea, Petitioner has already admitted his guilt to the offense. A defendant is ordinarily bound by the representations that he makes under oath during a plea colloquy. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* Absent a showing that his guilty plea was not knowing, intelligent and voluntary, Petitioner's claims in this regards have been waived by entry of his guilty plea. *See United States v. Broce,* 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *United States v. Ashe*, 47 F.3d 770, 775–76 (6th Cir. 1995); *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982).

Petitioner's current protestations of innocence are belied by his statements at the guilty plea hearing, *see Transcript of Plea Proceedings*, ECF No. 35 ("*Transcript*"), PageID# 136-40, and the record in this case establishes a knowing, intelligent and voluntary guilty plea. At his guilty plea hearing, Petitioner testified under oath. *Id.,* at PageID# 122. He denied being under the influence of drugs of abuse or medications. *Id.*, at PageID# 123. He said he understood the charge against him and that he had discussed potential defenses to the charge with his defense counsel. *Id.* at PageID# 123-24. He understood that he faced a mandatory minimum term of ten years in prison up to a term of life, *id.* at PageID# 124-25, and that he had discussed application of the advisory United States Sentencing Guidelines with his attorney. *Id.* at PageID# 130. He

4

denied having been threatened or coerced into pleading guilty. *Id.* at PageID# 133. He admitted his guilt to the offense charged. *Id*. at PageID# 133. He understood all of the rights that he waived by the entry of his guilty plea. *Id.* at PageID# 133-34. He agreed to the truth of the following facts:

> In 2011 Randall Roberts met a then 14-year-old child online via a social networking website called vampirefreaks.com. The minor and Roberts communicated via chats on vampirefreaks.com and later exchanged cell phone numbers and communicated through text messages and cell phone conversations. In late December 2011, the minor child agreed to meet and go to Roberts' home for the purpose of listening to music. Shortly after arriving at Roberts' home, Roberts provided the child with alcohol. Roberts then coerced the child to perform oral sex on him.
>
> Subsequent to the December 2011 incident, Roberts continued to communicate with the child via vampirefreaks.com and cellular phone. During these communications, Roberts and the child discussed future meetings and continued sexual activity. At various times in December 2011 and January 2012, Roberts threatened to send an e-mail that would get the child in trouble if the child did not arrive for their planned meetings. The child said that since December 2011, Roberts took the child to his home on at least four occasions, and on each of these occasions the child was sexually assaulted. Additionally, on at least seven occasions since December of 2011, Roberts had met the child at a location near the child's residence in the morning prior to going to school and coerced the child to perform oral sex on him in his vehicle.
>
> In May 2012, law enforcement officers were called to the residence of the child after a relative of the child discovered text messages on the child's phone. Officers reviewed the text messages on the child's cell phone and discovered a conversation with a cell phone number that was discovered to belong to Roberts.
>
> During the course of the text messages, Roberts indicated that he wished to engage in sexual intercourse with the child on May 16, 2012, and to have a continued sexual relationship until July of 2012, at which point the child would be free. In this text conversation, Roberts specifically arranged to meet the child at a specified location on May 16, 2012, at 7:05 a.m. to engage in sexual acts.

> Law enforcement officers thereafter obtained the child's cell phone and posed as the child while engaging in text conversations with Roberts in early May. In a text message regarding the May 16, 2012, meeting, Roberts instructed the child to wear clothing that was easy to get on and off.
>
> On May 16, 2012, at approximately 7:00 a.m., agents observed Roberts arriving at the location where he had planned to meet the child. Roberts sat in the parking lot of the meet location and waited for approximately 20 minutes. When the child did not arrive at the meet location, Roberts sent several text messages to the child's cell phone.
>
> Law enforcement officers posing as the child responded that the child was unable to meet Roberts that morning. In the next conversation that followed, Roberts indicated that he was going to check up on the child and that he might do something if the child was lying about why the child could not meet him that morning. Roberts was then observed driving in what officers knew to be the direction of the child's home and was stopped by law enforcement officers before he could arrive there.
>
> At the time of Roberts' stop and arrest, officers seized a Toshiba laptop computer, a Motorola cell phone, and an IOMEGA external hard drive in Roberts' vehicle. Forensic analysis of the external hard drive revealed the presence of approximately 39 videos that depicted minors engaged in sexually explicit conduct. Also located on the hard drive were two sexually explicit photographs of the minor child with whom Roberts had been communicating from December 2011 through May 2012.
>
> At the time of the foregoing activities, there was an open case with the Miami Township Police Department in which Roberts was under investigation for the rape of a minor female.
>
> All of the foregoing occurred in the Southern District of Ohio and involved communications and use of facilities of interstate commerce; that is, computers, the internet and cell phones.

*Id.* at PageID# 135-138. Petitioner was given the opportunity for an off-the-record discussion with his counsel and agreed that these facts were an accurate account of the charge alleged. *Id.* at PageID# 138. The Court reviewed with Petitioner the elements of the offense charged. *Id.* at PageID# 139. Petitioner indicated that he understood. *Id.* at PageID# 139. He again admitted

6

his guilt to the offense. *Id*. The Court found that Petitioner was fully competent and capable of entering an informed plea, was aware of the nature of the charge and of consequences of the plea, and concluded that his plea of guilty was knowing and voluntary, supported by an independent basis in fact containing each of the essential elements of the offense. *Id.* at PageID# 140.

Petitioner alleges that he was denied the effective assistance of counsel because his attorney failed to investigate the case or to obtain exculpatory evidence. *Memorandum in Support*, ECF No. 47, PageID# 240. Specifically, Petitioner complains that his attorney failed to challenge inaccuracies in the *Pre-sentence Investigation Report* regarding the child's misbehavior, self-scarring behavior, school performance, and relationships with other men. *Id*. He complains that his attorney failed to pursue a defense of mistake of age. "In a guilty plea context 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)(quoting *Hill v. Lockhart,* 474 U.S. at 59). Petitioner has not met this burden here.

Although Petitioner now argues that he did not know that the victim was a minor, given his previous admission of this fact, he cannot now claim that his attorney performed in a constitutionally inadequate manner by failing to raise the issue. *See United States v. Hutsell*, Nos. 5:12-cv-7202-JMH-CJS, 10-cr-78-JMH-CJS, 2015 WL 770324, at *6 (E.D. Ky. Feb. 20, 2015)(where the petitioner admitted to distributing a certain quantity of drugs, defense counsel does not violate *Strickland* for failing to dispute that amount at sentencing). Even assuming the existence of evidence regarding the child's self-destructive or problematic behavior, such evidence would not have assisted the defense. Petitioner does not indicate, and the record does

not reflect, the content of any portions of chat or telephone conversations that could have assisted the defense. There is simply no evidence that Petitioner's attorney should have secured, but failed to secure any exculpatory material. Moreover, the record does not indicate that the government would have been unable to establish the charge against Petitioner.

> It is well established that telephones, even when used intrastate, constitute instrumentalities of interstate commerce. *See Aquionics Acceptance Corp. v. Kollar*, 503 F.2d 1225, 1228 (6th Cir.1974) (holding use of telephone in intrastate service satisfies jurisdictional requirements of § 10(b) of Securities and Exchange Act); *see also United States v. Graham*, 856 F.2d 756 (6th Cir.1988) (holding use of telephone to initiate and receive interstate calls satisfies interstate commerce requirement of Travel Act); *FTC v. Shaffner*, 626 F.2d 32, 37 (7th Cir.1980) (noting defendant's use of telephone constituted use of instrumentality of interstate commerce). Similarly, cellular telephones, even in the absence of evidence that they were used to make interstate calls, have been held to be instrumentalities of interstate commerce. *See e.g., United States v. Clayton*, 108 F.3d 1114, 1117 (9th Cir.), *cert. denied*, 522 U.S. 893, 118 S.Ct. 233, 139 L.Ed.2d 165 (1997) (holding cellular telephones to be instrumentalities of interstate commerce).

*Weathers v. United States*, 169 F.3d 336, 340 (6th Cir. 1999). Even though a signal that actually connects two parties "was ultimately *intra* state, *inter* state activities" are required to make the connection possible, and therefore the use of a cellular telephone constitutes the use of an instrumentality in interstate commerce. *Id*. at 342. Petitioner admitted that he utilized the internet and his cellular phone in committing the offense to which he pleaded guilty. Further, by entry of his guilty plea, the government agreed not to pursue additional charges against Petitioner in that regard, and Petitioner obtained a reduction in his recommended sentence under the advisory sentencing guidelines for acceptance of responsibility and for timely notifying the authorities of his intention to plead guilty. Petitioner has failed to establish the denial of the effective assistance of counsel.

In short, Petitioner's first four claims are without merit.

**Claim Six**

In his sixth claim, Petitioner alleges that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose chat and phone texts in their entirety. In *Brady,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 86. Evidence is material "[i]f there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "There is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene,* 527 U.S. 263, 281 (1999). "In the absence of prejudice, even assuming a violation of *Brady*, reversal is not required." *United States v. Jones*, 766 F.2d 994, 998 n. 1 (6th Cir. 1985).

Petitioner alleges that the government withheld portions of telephone and computer text conversations. However, his conclusory allegation that the content of some unknown material may have assisted him in establishing his innocence of the charge will not support a claim under *Brady*. "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (citing *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994)); *Lynn v. United States*, 365 F.3d 1225, 1238 (11th Cir. 2004).

Petitioner's sixth claim, *i.e.,* prosecutorial misconduct, is without merit.

**Claims Five and Seven**

Petitioner asserts that his sentence violated the terms of his *Plea Agreement* and that the recommended sentence under the guidelines was improperly enhanced. According to Petitioner, he agreed to a sentence of ten years' imprisonment, followed by fifteen years' supervised release. *Affidavit,* ECF No. 46, PageID# 210; *Memorandum in Support*, ECF No. 47, PageID# 243. Petitioner also complains that the government improperly waited until the last minute to request a five level enhancement of his sentence under U.S.S.G. § 4B1.5(b)(1).[2] The record fails to support these allegations.

Petitioner signed a *Plea Agreement* indicating that he understood that he faced a term of imprisonment ranging from ten years to life and a term of supervised release ranging from five years to life. *Plea Agreement*, ECF No. 15, PageID# 50. He acknowledged in the *Plea Agrement* that the Court could impose any sentence up to the statutory maximum, and that the Court had yet to determine its sentence. He indicated that he was aware that any estimate of the probable sentencing range was not a promise and would not be binding on the Court. "The United States makes no promise or representation concerning what sentence the defendant will receive, and Defendant. . . cannot withdraw his guilty plea based upon the actual sentence." *Id*. at PageID# 51-52. The *Plea Agreement* also expressly included the position of the United States that a five level increase in Petitioner's sentence pursuant to U.S.S.G. § 4B1.5(b) should apply. *Id*. at PageID# 52. Petitioner agreed that there were no other agreements regarding application

---

[2] U.S.S.G. 4B1.5(b)(1) provides:

> (b) In any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:
>
> (1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three. However, if the resulting offense level is less than level 22, the offense level shall be level 22, decreased by the number of levels corresponding to any applicable adjustment from § 3E1.1.

of other provisions of the sentencing guidelines, that the recommendations were not binding on the Court, and that the final determination of sentence rested entirely with the Court. *Id.* at PageID# 52-53. Specifically, "[n]o additional promises, agreements, or conditions have been made relevant to this matter other than those expressly set forth herein, or unless signed in writing and signed by all parties." *Id.* at PageID# 55.

At the guilty plea hearing, the Court advised Petitioner that he faced a mandatory minimum term of ten years in prison and a possible life term of imprisonment; Petitioner indicated that he understood. *Transcrip*t, PageID# 124-25. He also understood that he faced a minimum term of five years of supervised release to a possible life term of supervised release. *Id.* at PageID# 125. The prosecutor read the terms of the *Plea Agreement,* including Petitioner's acknowledgement that the Court had the authority to impose any sentence up to the statutory maximum, and that any estimate of a probable sentencing range was only a prediction and not a promise. *Id.* at PageID# 125-26. The parties understood that the United States sought a five level enhancement under U.S.S.G. § 4B1.5(b). *Id.* at PageID# 127. Petitioner understood that the Court would make the final determination of sentence. *Id*. Petitioner acknowledged that these were the terms of his negotiated *Plea Agreement,* and that he understood those terms. *Id.* at PageID# 129. Petitioner also indicated that he had discussed with defense counsel the advisory sentencing guidelines. *Id.* at PageID# 130.

On this record, Petitioner's claims that his sentence violated the terms of the *Plea Agreement* and that his recommended sentence under the guidelines was improperly enhanced must fail.

**Claims Eight and Nine**

In his eighth and ninth claims, Petitioner alleges that police unconstitutionally obtained his statements, that he was coerced, was "given shock-interrogation," and that police improperly continued to question him after he requested counsel. *Memorandum in Support*, ECF No. 47, PageID# 249. He alleges that the authorities, acting in bad faith, used these illegally obtained statements to obtain a search warrant. *Memorandum in Support*, ECF No. 47, PageID# 250.

These claims have been waived by the entry of Petitioner's guilty plea.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. at 267. "An unconditional guilty plea constitutes a waiver of all pre-plea non jurisdictional constitutional deprivations." *Id.*; *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001)). *See also United States v. Martinez-Orozco*, 52 Fed.Appx. 790, 792 (6th Cir. 2002)(Fourth Amendment claim waived by guilty plea). Petitioner's eighth and ninth claims have therefore been waived.

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is

made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                              *s/ Norah McCann King*
                                              Norah McCann King
                                              United States Magistrate Judge
                                              November 23, 2015